# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| C.R., Jr., a Minor, and C.R., Sr. and E.R., Individually and as Parents and Next Friends of C.R., ) ) ) ) | |
| Plaintiffs, ) ) | Case No. 10 C 615 |
| v. ) ) | Judge Edmond E. Chang |
| Board of Education of the City of Chicago, District 299, ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

C.R., who is a minor,[1] and his parents filed this suit against Defendant Board of Education of the City of Chicago, District 299, pursuant to 20 U.S.C. § 1415(i)(3), seeking attorneys' fees and costs incurred by Plaintiffs as a result of a due-process hearing held under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq*. The parties have filed cross-motions for summary judgment. R. 13, 17. As detailed below, Plaintiffs did alter the legal relationship between C.R. and the District, thus entitling them to some attorneys' fees and costs. But the aspects of the administrative order that were actually legally binding were *not* more favorable than the District's pre-hearing settlement offer, and the IDEA limits recoverable fees and costs in those situations. The cross-motions for summary judgment are thus granted

---

[1]Federal Rule of Civil Procedure 5.2(a)(3) requires that filings refer to a minor only by the minor's initials.

in part and denied in part consistent with this opinion, and judgment will be entered for Plaintiffs in the amount of $8,069.25.

# I.

## A.

Although Plaintiffs seek to recover attorneys' fees arising from a June 2009 due-process hearing, that hearing was actually the second concerning C.R. in 2009. The first hearing (which was requested by the District) took place on March 9, 2009, and an explanation of the lead-up to the first hearing is necessary to understand the Court's decision. As detailed below, the overlap and quick turn-around time between the March 2009 hearing and the June 2009 hearing – overlap in the sense that C.R. requested the second hearing even *before* the completion of various evaluations of C.R. conducted as a result of the first hearing – will bear on the parties' cross-motions for summary judgment.

In 2009, C.R. was a fifteen-year-old who had just completed eighth grade at a Chicago middle school in District 299. R. 18, Pls.' Statement of Material Facts (Pls.' SMF) ¶ 1.[2] C.R. has been eligible for special education services since November 2004, based on his learning disability and speech language impairment. *Id.* ¶ 8. The District conducted a triennial evaluation of C.R. during the 2007-08 school year and C.R. underwent cognitive and academic testing. *Id.* ¶ 11. The District did not provide formal testing by a speech pathologist or an occupational therapist. *Id.* In April 2008,

---

[2]The Board of Education of the City of Chicago, District 299, is the relevant local education agency as defined in 20 U.S.C. § 1402(15). R. 18 ¶ 3.

the District convened a meeting to consider the triennial evaluation reports and to prepare an individualized education plan (IEP) for C.R. *Id.* ¶ 12.

In November 2008, Plaintiffs, through their attorney, requested independent educational evaluations of C.R. in the areas of academic skills, cognitive skills, communication skills, occupational therapy, and assistive technology. *Id.* ¶ 15. Plaintiffs also requested a psychiatric assessment of C.R.'s emotional and behavioral deficits that impacted his learning experience. *Id.* In response, the District filed a request for an impartial due process hearing, requesting that an independent hearing officer from the Illinois State Board of Education sustain the adequacy of the District's evaluations. *Id.* ¶ 16. The first due process hearing was held in March 2009 ("*C.R. I*") and resulted in the following: (1) the District agreed to fund psychiatric, assistive technology, and speech and language independent educational evaluations; (2) the Hearing Officer ordered the District to fund an occupational therapy evaluation; and (3) the Hearing Officer deemed the District's psychological evaluation to be adequate. *Id.* ¶¶ 17, 20. C.R. proceeded to obtain the agreed-upon and ordered evaluations at public expense and forwarded them to the District's attention. *Id.* ¶¶ 21-23.

Specifically, the speech and language evaluation was conducted on March 20 and forwarded to the District on May 8, 2009. R. 18-2 (Hearing Op.) at 3; R. 26, Pls.' Statement of Additional Material Facts (Pls.' SAMF) ¶ 2. The assistive technology evaluation took place on March 30 and was forwarded to the District on April 6, 2009. Hearing Op. at 3; Pls.' SAMF ¶ 1. C.R.'s psychiatric evaluation was conducted on April

3

10 and forwarded to the District on May 21, 2009.  Hearing Op. at 3; Pls.' SAMF ¶ 3. The psychological evaluation took place over the course of three days – April 21, 29, and May 14 – and was forwarded to the District on May 21, 2009.  Hearing Op. at 3; Pls.' SAMF ¶ 3.  Finally, C.R.'s occupational therapy evaluation was conducted on May 7 and forwarded to the District on May 8, 2009.  Hearing Op. at 3; Pls.' SAMF ¶ 2.

But earlier – on March 16, 2009 – before any of those evaluations took place, Plaintiffs filed a request for an impartial due process hearing, alleging that the District had not provided C.R. with a free and appropriate education (FAPE) from September 2004 to the present.  Pls.' SMF at ¶ 24.  In their hearing request, Plaintiffs complained that C.R. was denied a FAPE due to the District's failure to conduct adequate assessments of all areas of potential disabilities, provide essential related services, identify and utilize effective teaching methodologies, offer adequately designed instruction, educate C.R. with native language support and English Language Learner Services, provide assistive technology equipment, and develop an adequate and effective functional behavior analysis.  *Id.* ¶ 25.  Plaintiffs' due process complaint also specified several ways in which C.R.'s individualized education plans were allegedly inadequate and inaccurate.  *Id.*  Finally, C.R.'s parents claimed that, since 2004, the District improperly limited their ability to participate in C.R.'s educational planning by failing to provide IEPs and other reports and evaluations in their native Spanish language.  *Id.*  As a result of these alleged violations, Plaintiffs requested that C.R. be placed in a private therapeutic day school at public expense.  *Id.* ¶ 26.  They also sought specific relief in the form of related and compensatory services for C.R., and in

the form of an order that the District convene an IEP meeting to consider both the requested relief and the evaluation results. *Id.* Finally, Plaintiffs asked the Hearing Officer to order that the District provide all school records to C.R.'s parents, including all email and other correspondence that identifies C.R., and to order any "other relief" to be determined after the due process hearing. *Id.*

In response, as summarized by the Hearing Officer's eventual written opinion, the District argued that "it has provided the student with FAPE [a free and appropriate education], utilizing the appropriate teaching methodologies and providing for the appropriate level of related services to the student to make marked progress," including "tremendous" social and academic progress in the past three years. R. 18, Exh. A-5. The District argued that C.R.'s parents were at all times provided with a translator at individualized education planning meetings, as well as at meetings with school personnel. *Id.* The District also objected to the opening of the second due-process hearing because the first one had only just recently concluded. *Id.* Most importantly, the District argued "that it has provided the student with FAPE in the least restrictive environment, and request[ed] that the Hearing Officer find no denial of FAPE and deny all relief being requested by the Parents." *Id.*

C.R.'s second administrative due process hearing was scheduled for June 2, 2009. *Id.* at 1. As detailed more below, on May 22, 2009, the District made a settlement offer, which incorporated several of Plaintiffs' demands. Def.'s Statement

5

of Material Facts (Def.'s SMF) ¶ 6; *see* R. 18-4.  Plaintiffs did not respond to this offer. Def.'s SMF ¶ 7.

The second due process hearing began on June 2, 2009 and concluded on June 5.  Hearing Op. at 1.  Both of C.R.'s parents testified at the hearing through the services of a Spanish speaking interpreter.  *Id.* at 12.  The Hearing Officer also heard testimony from CPS teachers and staff, independent evaluators, and Kathy Fouks, the Director of Acacia, the private day therapeutic school where C.R.'s parents wanted to place him.  *Id.*  Before the hearing, the parties submitted briefs on the issue of whether evidence of the District's failure to provide written information and notices in Spanish to C.R.'s parents should be allowed beyond the two-year statute of limitations period. *Id.* at 14.  The Hearing Officer deferred his ruling on this issue until after the hearing. *Id.*

On July 27, 2009, the Hearing Officer issued a decision.  *Id.* at 1.  The Officer concluded that the District failed to provide C.R. with a free and appropriate education due to an insufficient amount of "related" services.  *Id.*  In the decision, the Hearing Officer evaluated the recommendations provided by each of the independent evaluators in the areas of psychiatry, psychology, bilingual speech-language pathology, occupational therapy, and assistive technology. *Id.* at 6-10.  The Hearing Officer found that C.R.'s "academic performance deteriorated for what can only be explained as the District not making the necessary adjustments needed in meeting the student's academic needs." *Id.* at 16.

The Hearing Officer also admonished the District for its failure to convene a timely IEP meeting after it received C.R.'s evaluations. *Id.* at 16. The District claimed that they had to stay the IEP meeting pending the resolution of *C.R. I. Id.* at 6. The Hearing Officer disagreed and found that the District should have taken immediate action to set the IEP process in motion once the evaluations were completed and tendered to the District. *Id.* at 16. He found that the District's decision to wait was not in C.R.'s best interest. *Id.*

Upon concluding his discussion of the issues, the Hearing Officer ordered the District to convene an IEP meeting to consider its evaluations and assessments, as well as the evaluations conducted on behalf of C.R., "as soon as reasonably practicable, preferably within the first week when District staff are required to report to school, but no later than the first week of the beginning of the 2009-10 school year for student attendance purposes and no later than Friday, September 11, 2009." Pls.' SMF at ¶ 28. The Hearing Officer instructed the District to give "careful consideration" to C.R.'s "total needs as outlined in the IEE assessments and recommendations, especially the student's needs identified in the area of English Language Learner Services, Occupational Therapy, Social Work, and Assistive Technology and the amount of time recommended for each service to be provided on a daily/weekly/monthly basis to formulate an 'appropriate' educational placement for the student transitioning from elementary to high school." *Id.* "The respective time allotments for the related services recommended by the IEE's appear reasonable and necessary." *Id.* The Hearing Officer

7

also directed the IEP team to give "careful consideration" to C.R.'s educational placement, focusing on his success in a small class and whether placement in a private day therapeutic school would be necessary to meet his specific identified needs. *Id.* Since C.R. had suffered academic deterioration, the Hearing Officer instructed the IEP team to consider compensating him with specific additional services, including tutoring, speech therapy, and a laptop computer with assistive technology support. *Id.* The Hearing Officer stated that if the IEP team rejected any of these services, it must provide specific reasons in writing. *Id.* Finally, the Hearing Officer ordered the District to "make every reasonable effort to provide the Parents with prior written notice in compliance with Federal and State laws and Rules and Regulations in their native language, Spanish." *Id.*[3]

After the Hearing Officer issued the decision, Plaintiffs submitted a claim for attorneys' fees and costs in the amount of $50,604.12. *Id.* ¶ 35. The District objected, and this lawsuit ensued.

---

[3]With regard to communications with C.R.'s parents, the Hearing Officer found that "[t]he lack of Parent Written Notification in their native language 'Spanish' is evidenced throughout the student's educational experience in the District's public schools from the present dating back to September 2004 . . . IEP meetings the Parents attended or parent/teacher conferences were not interpreted concurrent with the meeting being conducted." Hearing Op. at 12-13. However, the Hearing Officer also found that C.R.'s parents did bear some responsibility for the communication problems, as they should have taken a more active role with respect to C.R.'s educational experience. *Id.* at 21. Ultimately, the Hearing Officer put the District on notice that there are "serious flaws" in its communication efforts and it would be well advised to consider Plaintiffs' points in "fine tuning" its current translation and interpretation services. *Id.*

**II.**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard applies to cross-motions for summary judgment. *See Int'l Bhd. of Elec. Workers v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). The Court will "evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant." *Crespo v. Unum Life Ins. Co. of Am.*, 294 F. Supp. 2d 980, 991 (N.D. Ill. 2003).

**III.**

The IDEA contains a fee-shifting provision whereby "the court, in its discretion, may award reasonable attorney's fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). This Court has jurisdiction to adjudicate the fee petition based on 20 U.S.C. § 1415(i)(3)(A). Federal courts have jurisdiction over attorneys' fees suits resulting from an IDEA administrative proceeding. *Bd. of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377, 380-81 (7th Cir. 2000); *John M. v. Bd. of Educ. of City of Chicago, Dist. 299*, 612 F. Supp. 2d 981, 990 (N.D. Ill. 2009).

**A.**

As an initial matter, the Court rejects the District's argument that Plaintiffs' claim is barred by the applicable statute of limitations. R. 14 (Def.'s Br.) at 6-8. Under the IDEA, a plaintiff has 120 days from the time the administrative decision becomes final to file a suit for attorneys' fees under 20 U.S.C. § 1415(i)(3)(B). *McCartney C. v.*

9

*Herrin Cmty. Unit Sch. Dist. No. 4*, 21 F.3d 173, 175 (7th Cir. 1994) (borrowing 120-day period from the Illinois School Code). Specifically, the administrative decision becomes final "upon exhaustion of all judicial remedies by the school district." *Id.* In this case, the Hearing Officer rendered the decision in *C.R. II* on July 27, 2009. Under the Illinois School Code, the District had 120 days to challenge the Hearing Officer's decision by filing an action in any court of competent jurisdiction. 105 ILCS 5/14-8.02a(i). Thus, the District had until November 24, 2009 to challenge the decision, and when the District did not, the administrative decision became final on that date. Accordingly, Plaintiffs' claim accrued on November 24, 2009. From that accrual date, Plaintiffs had 120 days to file an action for attorneys' fees; the 120-day time limit is borrowed from the Illinois School Code. *Dell v. Bd. of Educ., Dist. 113*, 32 F.3d 1053, 1063-64 (7th Cir. 1994). Plaintiffs timely filed this lawsuit on January 29, 2010, within the 120-day limitations period for seeking attorneys' fees. *Rosemary B. v. Bd. of Educ. of Cmty. High Sch. Dist. No. 155*, 52 F.3d 156, 158 (7th Cir. 1995) (the limitation period for an attorney's fees case brought in Illinois under the IDEA commences after the 120-day period found in the Illinois School Code).

**B.**

To determine whether Plaintiffs are entitled to attorneys' fees, the Court must first ask whether they prevailed in the due process hearing. "The term 'prevailing party' under 20 U.S.C. § 1415(e)(4)(b) has the same meaning as the phrase does in 42 U.S.C. § 1988." *Nathan R.*, 199 F.3d at 382; *see also Jodlowski v. Valley View Cmty.*

*Unit Sch. Dist.*, 109 F.3d 1250, 2153 n.2 (7th Cir. 1997) ("[C]ases dealing with 42 U.S.C. § 1988, which provides for attorney's fees for prevailing parties in civil rights cases . . . nevertheless guide our interpretation of the meaning of 'prevailing party' under the IDEA."). In order to qualify as a "prevailing party" for purposes of the IDEA, a party must obtain "actual relief on the merits of a claim that materially alters the legal relationship between the parties . . . in a way that directly benefits [that party]." *Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 707-08 (7th Cir. 2005) (internal citations omitted); *see also T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003) (under the IDEA, plaintiffs may be considered prevailing parties if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit."). The party "must have obtained a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief." *T.D.*, 349 F.3d at 478 (citing *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001) (rejecting the "catalyst" theory as a basis for recovery of attorneys' fees)). "[T]he IDEA's fee-shifting provision allows courts to grant attorney's fees to parents who prevail in an administrative hearing." *T.D.*, 349 F.3d at 479.

Here, the District argues that C.R. is not a prevailing party under the IDEA because the relief he received was "*de minimis.*" Def.'s Br. at 6. It is true that the bulk of the Hearing Officer's order does *not* read like mandated relief that actually altered the legal relationship between the parties. For the most part, the Hearing Officer did

11

not order any specific, concrete change to C.R.'s individualized education plan. For example, the Hearing Officer ordered the District to "consider" the independent evaluations of C.R., but not necessarily to implement any specific change. R. 18-2, A-22. The Hearing Officer ordered the District to give "[c]areful consideration" to C.R.'s "total needs," but not necessarily to implement any specific change. *Id.* The Hearing Officer ordered the District to "consider" placing C.R. in private school, but did not order the District to place C.R. there. *Id.*

But weighing against these non-specific portions of the decision are two findings by the Hearing Officer. First, in summarizing the decision, the Hearing Officer stated that the District "[f]ailed to provide the student a free appropriate public education (FAPE): insufficient amount of related services." R. 18-2, A-1. Whether a student is receiving a free and appropriate education is the ultimate issue under the IDEA, and on this issue, the Hearing Officer found the District in non-compliance. Second, although the no-FAPE finding was not specifically repeated in the decision's detailed "Order" section, that section did contain the following directive to the District:

> To help in *compensating the student for the academic deterioration* suffered as evidenced by not only the District's own assessments but also the assessments provided by the IEE[s], additional services shall be considered by the IEP Team and specifically addressed by the team with specific reasons written within the IEP as to why the services may not be needed if determined not to be:
>
> a) Tutoring for two hours per week for at least the first year of his high school experience;
>
> b) Additional speech therapy after school hours for at least one year and[;]

12

> c) [P]roviding the student with a laptop computer with appropriate software, at district expense, and provision of direct support in the use of AT [assistive technology] resources for 60 mpw [minutes per week] for one year.

*Id.* at A-22 (emphasis added). This part of the Order has two significant aspects: first, that the Hearing Officer found that C.R. needed some help to "compensat[e]" for "academic deterioration suffered" by C.R. *Id.* This finding dovetails with the no-FAPE finding that the Hearing Officer reported in the summary of decision, *id.* at A-1, and rejected the District's claim that C.R. had made "tremendous progress" and that a FAPE had been provided. Second, the Order required that the District consider specific *types* of compensatory services (tutoring, speech therapy, and assistive technology) and, within those types of compensatory services, specific time periods and and specific resources (*e.g.*, two hours of tutoring for the first year). Furthermore, the Order required the District to explain why, if it refused to adopt those compensatory services, the District decided against them.

Thus, although it is true that the Hearing Officer did not specifically order most of the relief sought by Plaintiffs, the Hearing Officer did find that the District had failed to provide a free and appropriate education and that C.R. had academically deteriorated, and did order the District to consider specific compensatory services with the legally-mandated obligation to explain any refusal to adopt the specified services. This relief entitles Plaintiffs to "prevailing party" status under the IDEA. *See Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 907-08 (7th Cir. 1996) (even minimal relief obtained at the due process hearing supported a prevailing party

determination). And in light of the no-FAPE finding and the directive to adopt specific compensatory services, or explain why not, the awarded relief was not so *de minimis* that an attorneys' fees award must be entirely precluded. *See Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (holding that a plaintiff who formally but only nominally prevails may be denied recovery of attorneys' fees); *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989); *Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.*, 356 F.3d 798, 805 (7th Cir. 2004) (a simply technical or *de minimis* victory may not entitle a party to attorneys' fees at all).

**C.**

Before determining the amount of attorneys' fees to award, for the sake of completeness the Court will address – and reject – two other arguments advanced by Plaintiffs for establishing prevailing party status. First, Plaintiffs argue that the Order required the District to promptly convene an IEP meeting. R. 19 (Pls.' Br.) at 11. But at the time C.R. filed the request for a due process hearing (on March 16, 2009), C.R.'s independent educational evaluations had not yet even taken place. Thus, the District had not been afforded a chance to comply with its duty to convene an IEP meeting because the District had not yet received the evaluations. *See* 23 Ill. Adm. Code § 226.180(d) ("The district shall provide written notice convening the IEP Team's meeting within ten days after receiving the report of an evaluation conducted at public expense."); *see, e.g., Patricia E. v. Bd. of Educ. of Cmty. High Sch. Dist.*, 894 F. Supp. 1161, 1164 (N.D. Ill. 1995) ("While plaintiffs are free to resort to administrative action

under the provisions of IDEA, they cannot expect to recover fees and costs when their efforts contributed nothing to the final resolution of a problem which could have been achieved without resort to the administrative process."). Plaintiffs have not offered any facts showing that the District planned to disrupt the IEP process before March 16, 2009 or that the District would not have convened an IEP meeting upon receiving the evaluations in April and May 2009. Accordingly, the order to convene an IEP meeting does not confer Plaintiffs with prevailing party status.

Second, Plaintiffs urge this Court to consider the results of the IEP meetings that took place after the Hearing Officer's decision. Pls.' Br. at 9-11. They claim that the significant changes made to C.R.'s IEP "justifies an award for a substantial portion of the attorney fees incurred by the parents in this proceeding." *Id.* at 11. However, the changes made to the IEP were not a direct result of the administrative proceeding that serves as the basis of their fee petition, and thus this argument runs aground on *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001). In *Buckhannon*, the Supreme Court rejected the so-called "catalyst" theory as a basis for recovery of attorneys' fees. 532 U.S. at 610. The Court held that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605. The holding in *Buckhannon* applies to IDEA cases. *See Bingham v. New Berlin Sch. Dist.*, 550 F.3d 601, 602-03 (7th Cir. 2008); *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 478 (7th Cir. 2003). Thus, any of the

changes to the IEP that were not specifically ordered by the Hearing Officer's decision do not support prevailing party status. As discussed above, however, C.R. did still prevail on the ultimate issue – that the District had not provided a free and appropriate education – and on the requirement that the District provide compensatory services for C.R.'s academic deterioration.

**D.**

Although C.R. is a prevailing party, the attorneys' fees that he is eligible to recover will be sharply limited because of a provision in the IDEA that mirrors Federal Rule of Civil Procedure 68. The IDEA encourages settlement in lieu of administrative due-process litigation by barring fee-shifting of fees incurred after the school district makes a settlement offer that ends up being equal to, or more favorable than, the relief obtained by the student. 20 U.S.C. § 1415(i)(3)(D). Specifically, § 1415(i)(3)(d) states:

> Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if–
>
> > (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
> >
> > (II) the offer is not accepted within 10 days; and
> >
> > (III) the court . . . finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D)(i). There is an exception to this better-settlement limitation on attorneys' fees: "Notwithstanding subparagraph (D), an award of attorneys' fees and

related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer." § 1415(i)(3)(E).

Here, the District made a written offer of settlement on May 22, 2009, more than 10 days before the due-process hearing. Def.'s SMF ¶ 6; *see* R. 18-4. Significantly, Plaintiffs *never* responded to the District's offer of settlement. Def.'s SMF ¶ 7. The settlement offer contained specific, concrete services that the District was willing to provide in order to settle the administrative litigation, R. 15-2 (Attachment 1), not merely "consideration" of services, which was the bulk of the Order of the Hearing Officer. The services offered in settlement included:

> Occupational Therapy – The District would agree to provide 30 minutes per month of direct occupational therapy services and 60 minutes per month of consultative occupational therapy services.
>
> Social Work Services – The District would agree to provide 60 minutes per week of social work services.
>
> Speech/Language Services – The District would agree to provide 60 minutes per week of speech/language services.
>
> Nursing Services – The District would agree to provide 15 minutes per week of nursing services.
>
> * * *
>
> Speech/Language Services – The District would agree to fund 60 minutes per week of speech/language therapy for [C.R.] to occur outside of the regular school day for one year.
>
> Occupational Therapy – The District would agree to fund 30 minutes per month of occupational therapy services to occur outside of the regular school day for two years. The District would also agree to provide an additional 60 minutes per month of consultative occupational therapy services for two years.

R. 15-2 (Attachment 1).

As noted above, Plaintiffs never responded to the District's offer of settlement. Def.'s SMF at ¶ 7. The Order issued by the Hearing Officer was not "more favorable," § 1415(i)(3)(D)(i)(III), than the May 22, 2009 settlement offer. Although the Hearing Officer's decision did find that the District had not provided a free and appropriate education, and that certain compensatory services must be considered in light of C.R.'s academic deterioration, the Order did not itself direct the actual provision of specific services. The settlement offer, on the other hand, did. The District was willing to provide specified hours of services for specified durations: occupational therapy, social work, speech/language, nursing, after-hours speech/language therapy, and after-hours occupational therapy. R. 15-2 (Attachment 1). None of these specifics were actually ordered by the Hearing Officer, who instead left it to the District to "consider" a range of services. The mostly advisory nature of the Order, at least as to specific services, was likely a result of the jump-the-gun filing by Plaintiffs for the second due-process hearing: the administrative complaint was filed even before the evaluations were received and thus before the District could react to the evaluations. As a result, the settlement offer would have provided specific, concrete relief, whereas the Hearing Officer's decision ended up being mostly an admonishment to consider various broadly-stated services rather than an order to implement specific services.

Nor was there any substantial justification, § 1415(i)(3)(E), for refusing the settlement offer. The few cases that discuss the IDEA's better-settlement limitation "focus[] on the conduct of the plaintiff in rejecting the defendant's offer and whether that conduct was justified by a better result at the end of the due process hearing."

18

*Gross v. Perrysburg Exempted Vill. Sch. Dist.*, 306 F. Supp. 2d 726, 734-35 (N.D. Ohio 2004); *see also Joshua H. v. Lansing Pub. Sch.*, 161 F. Supp. 2d 888, 893-94 (N.D. Ill. 2001) (finding that plaintiffs had rejected, without negotiation, an offer of settlement that was identical to the achieved outcome); *Mr. and Mrs. L. v. Woonsocket Educ. Dept.*, 793 F. Supp. 41, 44-45 (D.R.I. 1992) (noting that plaintiffs never responded to the settlement offer and "having failed to make even a good faith attempt at settlement . . . now seek thousands of dollars in attorney's fees"). Plaintiffs did not respond to the settlement offer by the District, and thus did not even attempt to engage in a negotiation for potentially even more relief. In light of Plaintiffs' pre-evaluation request for a due-process hearing, the lack of any response to the settlement offer whatsoever, and the comparison between the settlement offer's terms and the mostly-advisory relief obtained from the hearing, there was no substantial justification for the Plaintiffs to reject the settlement offer.[4]

Accordingly, only pre-May 22, 2009 attorneys' fees are recoverable. Based on 21.65 attorney hours at $380 per hour for Mr. Michael O'Connor, 15.95 attorney hours at $185 per hour for Ms. Nelly Aguilar, 6.75 paralegal hours at $105 per hour for Mr. Peter Godina, and $21.50 for expenses, the pre-May 22, 2009 total is $11,908. However, as the District correctly points out, some of this time was spent on a statute of limitations issue on which the District ultimately prevailed. R. 18-2, A-21.

---

[4]Plaintiffs also categorize the Hearing Officer's order requiring the District to "make every reasonable effort" to provide Plaintiffs with prior written notice in Spanish as significant relief. Pls.' Resp. at 7. That directive – to be "reasonable" – does not render the Hearing Officer's decision more favorable than the concrete services offered in the settlement letter.

19

Subtracting the 9.25 hours (which is $3,515) that Mr. O'Connor spent on this issue[5] and the 1.75 hours (which is $323.75) that Ms. Aguilar spent, results in a final total of $8,069.25 in recoverable attorneys' fees and expenses.[6]

## IV.

For the reasons discussed above, although Plaintiffs achieved something of legal significance from the due process hearing, the legally-binding aspects of their victory was not more favorable than the District's settlement offer. Accordingly, attorneys' fees and expenses are limited to pre-May 22, 2009 amounts minus time spent on the non-prevailing statute of limitations issue. The parties' cross-motions [R. 13, 17] for summary judgment are granted in part and denied in part consistent with this opinion. Judgment is entered for Plaintiffs in the amount of $8,069.25.

ENTERED:

*[signature: Edmond E. Chang]*

HONORABLE EDMOND E. CHANG
United States District Judge

DATE: March 15, 2011

---

[5] Mr. O'Connor's time entries show that he spent time on the issue on April 19, 25, 27, and 28, and on May 7 and May 8, and Ms. Aguilar spent time on the issue on April 28, May 7, and May 8. R. 18-2, B-3, B-4, B-12.

[6] The District argues that there should be other deductions for duplicative and unnecessary time, or simply because the relief obtained was *de minimis*, Def.'s Br. at 13-14, but the Court disagrees that those entries should be deducted in light of the Hearing Officer's ultimate finding and the lengthy history of the factual background of C.R.'s education leading up to the hearing.